[No. D061724. Fourth Dist., Div. One. June 19, 2012.]

SAN DIEGO MUNICIPAL EMPLOYEES ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CITY OF SAN DIEGO et al., Real Parties in Interest.

1448

1450

COUNSEL

Tosdal, Smith, Steiner & Wax, Ann M. Smith and Fern M. Steiner for Petitioner.

No appearance for Respondent.

Jan I. Goldsmith, City Attorney, Donald R. Worley, Assistant City Attorney, and Walter C. Chung, Deputy City Attorney, for Real Party in Interest City of San Diego.

M. Suzanne Murphy and Wendi L. Ross for Real Party in Interest Public Employment Relations Board.

OPINION

**McDONALD, J.**—In 2011, the proponents of a voter initiative entitled the "Comprehensive Pension Reform Initiative" (CPRI) circulated petitions to qualify the CPRI for placement on the San Diego County ballot. The CPRI, if enacted, would amend the charter of the City of San Diego (City) in ways that, among other things, would impact retirement benefits for certain City employees. After the San Diego County Registrar of Voters certified that sufficient signatures had been collected to place the CPRI on the June 5, 2012, voter ballot, petitioner San Diego Municipal Employees Association (MEA), the recognized exclusive bargaining unit for the potentially affected employees, filed an unfair practices charge (UPC) against City with the Public Employment Relations Board (PERB). The UPC alleged City had engaged in an unfair labor practice by not satisfying the meet and confer

requirements of the Meyers-Milias-Brown Act (the MMBA) (Gov. Code, § 3500 et seq.) before placing the CPRI on the ballot. Accompanying the MEA's UPC was a request for injunctive relief.

PERB responded to the UPC by issuing a complaint against City, alleging City's conduct violated the MMBA. PERB also authorized its general counsel to file an action in the superior court seeking injunctive relief. PERB filed the present action (the superior court action) seeking, among other relief, an order temporarily enjoining the City from presenting the CPRI to the voters on the June 5, 2012, ballot.

The trial court rejected PERB's motion to enjoin the City from placing the CPRI on the June 5 ballot, and the administrative law judge (ALJ) appointed to hear MEA's UPC scheduled an administrative hearing on the UPC for early April, 2012. However, City moved to stay the administrative hearing and quash the subpoenas issued by the ALJ. The trial court granted City's motions, and MEA has filed this writ proceeding seeking to vacate the trial court's order enjoining further administrative hearings in connection with the UPC. The narrow issue presented here is whether the trial court's order staying the administrative proceedings was proper.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The CPRI*

In April 2011 three citizens gave notice to City that they intended to circulate a petition to have the CPRI placed on the ballot; the CPRI contemplated amending City's charter to alter the pension benefits for certain City employees. MEA, a recognized exclusive bargaining unit for potentially affected employees, made numerous demands that City engage in the meet and confer procedures, allegedly required under *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145] (*Seal Beach*), before the CPRI was placed on the ballot. MEA contended the meet and confer procedures applied to the CPRI because the CPRI was a "sham device" used by City officials to circumvent the meet and confer obligations imposed on City by the MMBA. City rejected the MEA's demands to meet and confer, asserting the CPRI was a citizen initiative rather than a City-sponsored initiative and therefore the meet and confer obligations under the MMBA had no application.

### B. *The UPC*

On November 8, 2011, the San Diego County Registrar of Voters certified that sufficient signatures had been collected to place the CPRI before the

voters on the June 5, 2012, ballot. On January 30, 2012, City passed an ordinance to place the CPRI on the June 5, 2012, ballot.

MEA then commenced proceedings against City under Government Code[1] section 3509 by filing a UPC with PERB. The UPC alleged (1) City had an obligation under the MMBA to satisfy the meet and confer process before it could alter the terms and conditions of employment for its workers, (2) the CPRI directly and substantially affected the terms and conditions of employment, and (3) officials of City had placed the CPRI on the ballot by manipulating the citizen-initiative process to insulate City from the meet and confer process that would have been mandated had the CPRI been proposed directly by City's legislative body.

The MEA's UPC was accompanied by a request pursuant to PERB regulation No. 32450 (Cal. Code Regs., tit. 8, § 32450) that PERB exercise the powers conferred by section 3541.3, subdivision (j), to seek temporary injunctive relief. MEA argued that, if City was not enjoined from placing the CPRI on the ballot until after the administrative process on the UPC was completed, the purpose of the meet and confer requirements would be subverted because passage of the CPRI could make it difficult or impossible to unwind the changes to the terms and conditions of employment for the affected employees.

PERB issued letters to City and MEA describing the procedures to be followed to process the UPC, and City filed an initial response asserting it had no meet and confer obligations with respect to the CPRI and had not violated the MMBA. PERB ultimately issued a complaint against City, alleging City's conduct violated sections 3503, 3505, and 3506, as well as California Code of Regulations, title 8, section 32603, subdivisions (a) through (c). PERB ordered an expedited administrative hearing and appointed an ALJ to hold an evidentiary hearing on the UPC. PERB also authorized its general counsel to file an action in the superior court seeking appropriate injunctive relief.

## C. *The Superior Court Action*

PERB filed the present superior court action seeking, among other relief, an order temporarily enjoining the City from presenting the CPRI to the voters on the June 5, 2012, ballot. The motion for injunctive relief, noting PERB was statutorily authorized to seek injunctive relief as an interim remedy against unfair practices, argued the court should grant the requested temporary injunctive relief because both prongs essential to such relief were

---

[1] All further statutory references are to the Government Code unless otherwise specified.

present: (1) the evidence provided "reasonable cause" to believe an unfair practice had been committed, and (2) an injunction to preserve the status quo pending resolution of the administrative proceedings was "just and proper" because a final determination of whether City violated the MMBA in connection with the CPRI would be rendered meaningless if the CPRI were approved by the voters and enacted into law. City opposed the motion, asserting (1) only City-proposed initiatives are subject to the meet and confer requirements of the MMBA, (2) citizen initiatives are not subject to the meet and confer requirements, and (3) the public officials acted pursuant to their First Amendment rights (not on behalf of City as City's agents) when they supported and promoted the CPRI. City argued that, because neither of the prongs essential to injunctive relief were present (e.g., there was neither reasonable cause to believe an unfair practice had been committed nor would removal of the CPRI from the ballot be just and proper), the injunction should be denied. The trial court, noting the preference for postelection—rather than preelection—challenges to the validity of initiative measures, rejected PERB's motion for a preliminary injunction because any alleged invalidity could be challenged in quo warranto proceedings after the election. Accordingly, the trial court denied PERB's motion to enjoin the CPRI from being placed on the June 5 ballot.

### D. *The Administrative Proceedings*

After the court denied PERB's request for injunctive relief, the ALJ appointed to hear MEA's UPC scheduled an administrative hearing on the UPC for early April 2012. City filed its answer in the PERB proceedings that, among other things, denied City, through its agents, had "co-authored, developed, sponsored, promoted, funded and implemented [the CPRI]" while refusing to meet and confer on the terms of the CPRI.[2]

While the matter was pending before the ALJ in the PERB proceedings, City moved in the superior court action for an order staying the administrative hearing and quashing the subpoenas issued by the ALJ. City's cross-complaint in the superior court action alleged that PERB, by seeking injunctive relief in the superior court, necessarily sought a ruling from the superior court on the merits of whether City had meet and confer obligations in

---

[2] City also filed a motion with the ALJ seeking to disqualify PERB and its staff from hearing the UPC on the grounds that City could not obtain a fair and impartial hearing before PERB. MEA opposed the motion, and the ALJ denied the motion for lack of good cause. City also moved before the ALJ to dismiss the PERB complaint, asserting that as a matter of law the MMBA's meet and confer obligations cannot be applied to an initiative not sponsored by the City's legislative body. MEA filed opposition to that motion. However, the ALJ was unable to rule on City's motion because the ALJ was required to place further PERB proceedings (including the motion and the scheduled administrative hearing on the UPC) in abeyance because the superior court entered the order staying the PERB proceedings.

connection with the CPRI, and City alleged that PERB had therefore consented to the superior court's jurisdiction as the sole arbiter of the legal duties of City as to the CPRI. Additionally, City alleged that PERB, by issuing the complaint and seeking adversarial relief against City, had forfeited its ability to act as a neutral arbiter and shown City could not obtain a fair hearing from PERB on MEA's UPC claim.

Based on these allegations, City sought a stay of all administrative proceedings and an order quashing all subpoenas issued by the ALJ. City's ex parte application for a stay of the administrative proceedings argued the court had the power to stay the PERB proceedings as part of its inherent power to control proceedings relating to litigation pending before the court, and should exercise that power because (1) PERB's proceedings would likely result in an *erroneous* ruling of imposing meet and confer obligations on City when none exist with regard to a citizen-sponsored initiative, (2) PERB's proceedings would likely produce *inconsistent* rulings because they would likely impose meet and confer obligations on City while the pending superior court action would likely result in the opposite ruling, and (3) City could not receive its due process right to an impartial adjudicative forum because PERB has demonstrated (by seeking the injunctive relief) that it has abandoned its role as impartial adjudicator and assumed the role of an adverse litigant.[3]

PERB and MEA opposed City's motion for a stay. PERB argued it has initial exclusive jurisdiction to interpret and administer the MMBA, including whether an unfair practice charge is justified and the appropriate remedy to effectuate the purposes of the MMBA, and therefore has exclusive initial jurisdiction to determine whether City's conduct was lawful under the MMBA. PERB argued it properly processed the UPC and issued a complaint as required under the applicable regulatory scheme, and therefore its actions could not support a claim of bias or unfairness to support a stay of the administrative proceedings. MEA joined PERB's opposition to the application to stay the PERB proceedings, noting that PERB has exclusive initial jurisdiction over MEA's UPC, and that seeking the temporary injunction was merely an exercise of statutorily conferred powers to attempt to preserve the status quo while the administrative proceedings remained pending. The trial court granted City's motion to stay the administrative proceedings, and MEA has filed this writ proceeding challenging the stay.

---

[3] In a subsequent filing, City also argued it was excused from exhausting the administrative process under the "futility" exception because PERB's superior court action showed that PERB had prejudged the case.

## ANALYSIS

A. *PERB Has Exclusive Initial Jurisdiction Over MEA's Claim That
 City Violated the MMBA*

Because City's arguments in support of the trial court's order revolve
largely around PERB's activities with regard to MEA's UPC, we examine the
legislatively prescribed structure for resolving a complaint alleging an unfair
practices claim under the MMBA.

*PERB's Initial Jurisdiction Over MMBA Claims*

In 1968, the Legislature enacted the MMBA, which authorized public
entities and labor representatives to confer and reach binding agreements on
wages, hours, and working conditions. (*Coachella Valley Mosquito & Vector
Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th
1072, 1083 [29 Cal.Rptr.3d 234, 112 P.3d 623] (*Coachella Valley*).) PERB
was later established (*id.* at p. 1085) and, as an administrative agency, was
charged with the duty to adjudicate unfair labor practice charges. Its jurisdic-
tion was set forth in section 3541.5, which provides that "[t]he initial
determination as to whether the charges of unfair practices are justified, and,
if so, what remedy is necessary to effectuate the purposes of this chapter,
shall be a matter within the *exclusive jurisdiction* of the board." (Italics
added.)

In 2000, the Legislature enacted section 3509 (Stats. 2000, ch. 901, § 8,
p. 6607), which explicitly extended PERB's jurisdiction to cover matters
arising under the MMBA. Section 3509, subdivision (b), provides: "A
complaint alleging any violation of [the MMBA] . . . shall be processed as an
unfair practice charge by [PERB]. *The initial determination as to whether the
charge of unfair practice is justified* and, if so, the appropriate remedy
necessary to effectuate the purposes of this chapter, shall be a matter within
the *exclusive jurisdiction* of [PERB] . . . ." (Italics added.) This enactment
removed "from the courts their initial jurisdiction over MMBA unfair practice
charges" (*Coachella Valley, supra,* 35 Cal.4th at p. 1089) and vested *exclusive
initial jurisdiction* in PERB. (*Id.* at p. 1077; accord, *City of San Jose v.
Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 605–606 [110
Cal.Rptr.3d 718, 232 P.3d 701] (*San Jose*).)

██ "One key provision of the MMBA is its meet-and-confer requirement.
'Section 3505 of the MMBA requires governing bodies of local agencies to
"meet and confer [with employee representatives] in good faith regarding
wages, hours, and other terms and conditions of employment" and to
"consider fully" such presentations made by the employee organizations.' "

(*DiQuisto v. County of Santa Clara* (2010) 181 Cal.App.4th 236, 254 [104 Cal.Rptr.3d 93]; see Cal. Code Regs., tit. 8, § 32603 ["It shall be an unfair practice for a public agency to do any of the following: [¶] . . . [¶] (c) Refuse or fail to meet and confer in good faith with an exclusive representative as required by [section] 3505 . . . ."].) Whether an employer's refusal to satisfy its alleged meet and confer obligations is an unfair labor practice under the MMBA is therefore a claim falling within PERB's exclusive initial jurisdiction. (*International Assn. of Firefighters, Local 230 v. City of San Jose* (2011) 195 Cal.App.4th 1179, 1209–1211 [125 Cal.Rptr.3d 832] (*Firefighters*).)

### PERB's Procedures for Resolving MMBA Claims

■ When an unfair practices charge is filed with PERB, it is assigned to an agent who must determine whether the facts alleged by the complainant state a prima facie case, and whether the charging party is capable of providing admissible evidence in support of the allegations. (Cal. Code Regs., tit. 8, § 32620, subd. (b).) Although the responding party must be apprised of the allegations and be provided an opportunity to state its position (*id.*, § 32620, subd. (c)), the agent must issue a complaint if the allegations and evidence suffice to establish a prima facie case. (*Id.*, § 32640, subd. (a).)

When there is a dispute over the factual allegations or conflicting theories of law, "[i]t is not the function of the Board agent to judge the merits of the charging party's dispute. [Citations.] Disputed facts or conflicting theories of law should be resolved in other proceedings after a complaint has been issued." (*Golden Plains Unified School Dist.* (2002) PERB Dec. No. 1489 [2002 Cal. PERB Lexis 27 at p. *8].) It is the role of the ALJ appointed to hear the dispute to resolve these disputed issues. (*County of Inyo* (2005) PERB Dec. No. 1783-M [2005 Cal. PERB Lexis 135 at pp. *1–*2].)

■ At the administrative hearing before the ALJ, the charging party and the respondent have the right to subpoena, call, examine and cross-examine witnesses, and to introduce documentary and other evidence. (Cal. Code Regs., tit. 8, §§ 32180, 32170.) The burden is on the charging party to prove its case by a preponderance of the evidence. (*Id.*, § 32178.) The ALJ must issue a written decision containing a statement of the facts, law and rationale for the decision. (*Id.*, §§ 32215, 32350.) Any party may file exceptions to the ALJ decision with PERB (§ 32300), and PERB may issue its own decision, or it may affirm, reverse or modify the ALJ's decision, or it may order further evidentiary proceedings. (*Id.*, § 32320.) Any party aggrieved by PERB's decision may seek review of PERB's decision by a writ petition in the appellate court. (§ 3509.5.)

*Analysis*

■ The parties appear to agree that, in ordinary circumstances, PERB has exclusive initial jurisdiction to adjudicate MEA's claim. As the expert administrative agency established by the Legislature to administer collective bargaining for covered governmental employees, PERB has exclusive initial jurisdiction over conduct that arguably violates the MMBA. (*Coachella Valley, supra*, 35 Cal.4th at pp. 1077, 1089; *San Jose, supra*, 49 Cal.4th 597, 605–606.) However, City appears to contend that because this case involves a dispute over the constitutional free speech rights of City's elected officials, it is beyond PERB's purview and therefore outside PERB's exclusive *initial* jurisdiction. City's argument ignores settled precedent that PERB may construe employee relations laws considering constitutional precedent. (See, e.g., *Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 583 [262 Cal.Rptr. 46, 778 P.2d 174] (*Cumero*); *Richmond Unified School Dist.* (1979) PERB Dec. No. 99 [1979 Cal. PERB Lexis 20 at p. *16].) The mere fact that constitutional rights may be implicated or have some bearing on this dispute is not in and of itself sufficient to divest PERB of its exclusive *initial* jurisdiction to consider MEA's allegations that City's conduct violated the MMBA. If City believes the ALJ's ultimate resolution of MEA's claim is legally flawed, City may appeal to PERB and, if necessary, may seek writ relief from the Court of Appeal. However, the mere fact that City contends the actions of its elected officials in connection with the CPRI as a matter of law cannot violate the MMBA does not excuse City from exhausting the administrative process before it seeks relief through the judicial branch. (Cf. *Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816, 1825 [17 Cal.Rptr.2d 323].)

B. *The Stay of the PERB Proceedings Is Unsupported by City's Claim That City Is Excused from Exhausting the Administrative Process*

The trial court's order staying the PERB administrative proceedings was unaccompanied by any statement of decision, and we are therefore uncertain as to the grounds on which the court premised its order. However, in this writ proceeding, City argues the order should be affirmed, and the matter should be litigated in the superior court action without the necessity of exhausting the administrative remedies provided under the MMBA, because City was excused from the ordinary requirement that administrative remedies be exhausted. (*San Jose, supra*, 49 Cal.4th at p. 601.) City argues there are three recognized grounds for excusing the necessity of exhausting the administrative remedy process present in this case: it would be futile to engage in the administrative process (*Coachella Valley, supra*, 35 Cal.4th at pp. 1080–1081); PERB lacks any jurisdiction to resolve the claim (*id.* at

pp. 1081–1082); and the administrative remedy is inadequate (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609]).

*The Futility Claim*

■ City first argues it would be futile to pursue the administrative process because PERB has already decided the merits of the UPC and has decided the appropriate remedy. Certainly, "[f]ailure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile. [Citation.] . . . The futility exception requires that the party invoking the exception 'can positively state that the [agency] has declared what its ruling will be on a particular case.' " (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936 [16 Cal.Rptr.3d 849, 94 P.3d 1055].) Although this exception is potentially available to excuse pursuing the administrative remedies provided by the MMBA (*Coachella Valley, supra,* 35 Cal.4th at pp. 1080–1081), we are unpersuaded that City can invoke this exception in this case. In *Coachella Valley,* the employee's association (CSEA) filed an MMBA unfair practices charge against the government agency (District), and District argued it was not required to exhaust the administrative remedies because it contended the limitations period was six months for such claim, but it would have been futile to pursue the administrative process because PERB had held, in other cases, that all MMBA unfair practice charges filed with PERB on and after July 1, 2001, were subject to a three-year limitations period. (*Coachella Valley, supra,* 35 Cal.4th at pp. 1080–1082.) The *Coachella Valley* court rejected that argument, concluding: "That analysis is flawed. For the futility exception to apply, it is not sufficient that a party can show what the agency's ruling would be on a particular *issue or defense.* Rather, the party must show what the agency's ruling would be ' "on a particular *case.*" ' . . . [¶] Here, it is not sufficient that we know what the PERB's final ruling would have been on the District's limitations defense. For the futility exception to apply, the District must show how the PERB would have ruled on the CSEA's unfair practices charge. Had the administrative proceeding run its course, the District might have prevailed on some procedural ground other than expiration of the limitations period, *or it might have prevailed on the merits.* Thus, the District did not show that further administrative proceedings would have been futile because the outcome of those proceedings was known in advance." (*Id.* at p. 1081, third italics added & citation omitted.)

■ City argues the futility exception is satisfied because PERB's superior court action showed the outcome of the administrative process was certain. The evidentiary basis cited by City in support of this claim is that PERB's complaint sought a preliminary injunction alleging City had "unlawful[ly] attempt[ed] to avoid its obligations under the MMBA," and also prayed for a

permanent injunction requiring City to meet and confer regarding the CPRI and any future initiatives that may affect employees' wages and retirement benefits. However, the statutory scheme expressly contemplates that PERB, upon issuance of a complaint charging an unfair labor practice, has discretion to "petition the court for appropriate temporary relief or restraining order." (§ 3541.3, subd. (j).) The fact PERB elects to seek temporary injunctive relief to preserve the status quo does not automatically compromise PERB's neutrality when it hears the merits of the unfair practices charge. (Cf. *San Diego Teachers Assn. v. Superior Court* (1979) 24 Cal.3d 1, 10 [154 Cal.Rptr. 893, 593 P.2d 838].) Indeed, City's argument—if credited—would effectively strip PERB of its statutorily enumerated power under section 3541.3, subdivision (j), to seek temporary injunctive relief, because under City's theory any invocation of that power would divest PERB of any further jurisdiction under the "futility" exception.[4] We therefore reject City's argument that it was excused from exhausting the administrative remedies under the "futility" exception.

### The "Lack of Authority" Claim

██ City next asserts it should be excused from exhausting the administrative process because PERB lacks the " 'authority, statutory or otherwise, to resolve the underlying dispute between the parties.' " (*Coachella Valley, supra*, 35 Cal.4th at pp. 1081–1082.) However, the UPC charged City with violating the meet and confer requirements of the MMBA. Whether the employer's conduct violated its alleged meet and confer obligations and constituted an unfair labor practice under the MMBA is a claim falling within PERB's jurisdiction (*Firefighters, supra*, 195 Cal.App.4th at pp. 1209–1211), and that initial exclusive jurisdiction extends to activities " 'arguably protected or prohibited' by public employment labor law . . . ." (*San Jose, supra*, 49 Cal.4th at p. 606, italics added.) City does not dispute that, had City *directly* placed the CPRI on the ballot without satisfying the meet and confer procedures, it would have engaged in conduct prohibited by the MMBA under *Seal Beach, supra*, 36 Cal.3d 591. Because MEA's UPC alleges (and provides some evidence to support the allegations) that the CPRI (while nominally a citizen initiative) was actually placed on the ballot by City using straw men to avoid its MMBA obligations, the UPC does allege City engaged in activity *arguably* prohibited by public employment labor law, giving rise to PERB's initial exclusive jurisdiction. (*San Jose, supra*, 49 Cal.4th 591.)

---

[4] Because the standard for temporary relief to preserve the status quo is not whether the unfair labor practice has *in fact* occurred, but instead is whether there is "reasonable cause" to believe an unfair labor practice has occurred and whether preserving the status quo pending resolution of the dispute would be "just and proper" (*Public Employment Relations Bd. v. Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 895–897 [186 Cal.Rptr. 634]), PERB's election to seek to preserve the status quo is not necessarily premised on a determination the unfair labor practice has in fact occurred.

■ City's lack of authority relies largely on *Coachella Valley* to assert City should be excused from completing the PERB process under the three-part analysis employed in *Coachella Valley* to determine whether to excuse a party from exhausting the administrative process. In *Coachella Valley*, the CSEA's complaint was filed in July 2001, but PERB's complaint there alleged the District committed violations of the MMBA between December 1999 and July 2001. (*Coachella Valley, supra*, 35 Cal.4th at pp. 1078–1079.) The District sought writ relief in the superior court asserting PERB did not have jurisdiction to issue the complaint because it was time-barred by a six-month statute of limitations (*ibid.*), and District argued it was not required to exhaust the administrative remedies before seeking writ relief under the lack of authority exception (*id.* at pp. 1081–1083). The *Coachella Valley* court explained that, under the lack of authority exception, a party may seek judicial relief without exhausting the administrative remedies: **(9)** "when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.' [Citations.] [¶] Here, the limitations issue implicates the PERB's administrative authority or jurisdiction because the District contends that the applicable limitations period for MMBA unfair practice charges is found in Government Code section 3541.5, subdivision (a), which states that the PERB 'shall not . . . [¶] . . . [i]ssue a complaint in respect of any charge based upon an alleged unfair practice occurring more than six months prior to the filing of the charge.' Under this provision, expiration of the six-month limitation period *deprives the PERB of authority to issue a complaint.*

■ "In deciding whether to entertain a claim that an agency lacks jurisdiction *before the agency proceedings have run their course*, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue." (*Coachella Valley, supra*, 35 Cal.4th at pp. 1081–1082, italics added.)

The Supreme Court in *Coachella Valley* concluded the three-part test was adequately met. On the first element, the *Coachella Valley* court concluded District had not shown it would suffer irreparable harm if required to pursue the administrative process before obtaining a judicial resolution of the limitations question but nevertheless found the "burden" element satisfied because there was "a significant public interest in obtaining a definitive resolution of this fundamental legal question," which weighed in favor of judicial intervention. (*Coachella Valley, supra*, 35 Cal.4th at p. 1082.) On the second and third factors, the *Coachella Valley* court observed that "District makes a strong and ultimately persuasive argument that the proper limitations period is six months and not, as the PERB has ruled, three years. Thus, the second factor also weighs in favor of excusing exhaustion. Finally, in regard

to the third factor, judicial intervention at this stage will not deny us the benefit of the PERB's administrative expertise; the issues are purely legal and of a kind within the expertise of courts, and we have received the benefit of the PERB's views on the issues through its briefs in this court." (*Coachella Valley, supra*, 35 Cal.4th at pp. 1082–1083.) The *Coachella Valley* court concluded that because all three factors favored judicial intervention, the administrative jurisdiction exception was satisfied and District was excused from exhausting its administrative remedies. (*Id.* at p. 1083.)

We are not persuaded by City's "lack of jurisdiction" argument, for both procedural and substantive reasons. The procedural bar to City's "lack of authority" argument is that this argument was not raised below as a basis for staying the PERB proceedings.[5] "Under familiar general rules, theories not raised in the trial court may not be raised for the first time on appeal." (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618 [74 Cal.Rptr.2d 101].) Although this rule excepts from its operation pure questions of law on undisputed facts, that exception would be inapplicable here because (as more fully explicated below) City's argument on the merits appears to involve factual assertions open to dispute but not presented for resolution below. (*Ibid.*)

Assuming City could raise this argument, we are unpersuaded that applica-tion of the same factors described in *Coachella Valley* favor judicial interven-tion before the administrative process has been pursued. On the "burden" element, pursuit of the administrative process would not have interfered with presenting the CPRI to the voters because the trial court had already rejected PERB's motion for a preliminary injunction to prevent the CPRI from being placed on the June 5 ballot. City argues, for the first time in this writ proceeding, that pursuing the administrative procedures would "create an inordinate delay in implementing the CPRI" if it were approved by the voters, thereby forfeiting the savings to be garnered from the CPRI. However, there

---

[5] Although City argued below that PERB lacked "jurisdiction," its argument below was premised on the claim that PERB has no "jurisdiction to resolve constitutional and legal issues related to elections matters," and made no reference to the tripartite test described by the *Coachella Valley* court for application of the lack of authority exception. Although City does not expressly resurrect the claim that PERB has no "jurisdiction to resolve constitutional and legal issues related to election laws," we note this argument would be contrary to decisional law. Courts do not automatically excuse the exhaustion of administrative remedies merely because "the ultimate legal issues . . . are better suited for determination by the courts. . . . [C]onstitutional challenges are frequently raised to the application of an administrative statutory scheme, yet the courts typically require such issues be presented to the administrative agency in the first instance." (*Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 169 [6 Cal.Rptr.2d 714].)

is no evidence supporting this assertion, and City's argument is unaccompanied by any explanation of why litigating the dispute through the *administrative* procedures would create a *greater* delay in implementing the CPRI than the delay that would accompany litigation of the dispute through *trial court* procedures.

Moreover, the second and third factors considered in *Coachella Valley*—the strength of the legal argument that PERB does not have jurisdiction and the extent to which administrative expertise may aid in resolving the jurisdictional issue—convince us *Coachella Valley* is distinguishable. On the first factor, the *Coachella Valley* court examined the purely legal question of which statute of limitations applied, and the resolution of that legal question led the *Coachella Valley* court to conclude PERB lacked the *power* to adjudicate the dispute. In contrast, resolution of MEA's UPC arguably involves factual elements, because MEA alleges the CPRI was not a true citizen-sponsored initiative but was instead a sham device employed by City officials to circumvent the meet and confer obligations imposed on City by the MMBA. More importantly, the fact City may have significant legal arguments militating against a finding that the CPRI violated the MMBA does not deprive PERB of the *authority* to rule on those arguments (cf., *Cumero, supra*, 49 Cal.3d at p. 583), which renders *Coachella Valley* inapposite. On the final factor, the *Coachella Valley* court noted "judicial intervention at this stage will not deny us the benefit of the PERB's administrative expertise; the issues are purely legal and of a kind within the expertise of courts, and we have received the benefit of the PERB's views on the issues through its briefs in this court." (*Coachella Valley, supra*, 35 Cal.4th at p. 1083.) In contrast, the issues here do involve mixed questions of law and fact, and therefore judicial intervention at this stage would deny us the benefit of PERB's administrative expertise.[6] Moreover, on the core legal questions, we have not received the benefit of PERB's views on the issues through its briefs in this court, because PERB's briefs in this proceeding have been limited to defending its exclusive initial jurisdiction over the dispute, and have not contained PERB's view on the merits of whether the CPRI constituted an unfair labor practice. For the foregoing reasons, we are not persuaded by City's argument that the lack of authority exception justifies judicial intervention before the administrative processes have been exhausted.

---

[6] Contrary to City's claim in this proceeding, PERB did not concede this was purely a legal dispute. Instead, PERB argued below that although "[t]here are many legal [issues,] [t]here's some factual issues . . . [a]nd having that determination, at least a record made, may assist the Court" in resolving the issues. In this writ proceeding, City makes a related argument by requesting that we exercise our original jurisdiction to speedily resolve the basic legal issue in this case because it is a matter of statewide concern and does not depend on the resolution of disputed facts. However, there are factual questions of sufficient significance that we decline to resolve the dispute in a vacuum, but instead defer to PERB's initial exclusive jurisdiction to resolve MEA's UPC.

*The "Inadequacy of Administrative Remedy" Claim*

City finally asserts it is excused from exhausting the administrative process because the procedures are too slow and therefore the administrative remedy is inadequate. (Cf. *Los Angeles County Employees Assn. v. County of Los Angeles* (1985) 168 Cal.App.3d 683, 686 [214 Cal.Rptr. 350].) City's argument is premised on the contention that delays in implementing the CPRI while awaiting the administrative process will deprive the CPRI of some of its effectiveness. However, this argument was not raised below, and therefore may not be raised here. (*McDonald's Corp. v. Board of Supervisors, supra*, 63 Cal.App.4th at p. 618.) Moreover, as discussed above, there is no evidence supporting City's assertion, and City does not explain how litigating the dispute through administrative procedures would create a greater delay in implementing the CPRI than the delay that will accompany litigation of the dispute through the trial court.

### C. *City's Remaining Contentions Do Not Support the Trial Court's Order*

City raised a series of arguments below, and resurrects some of those arguments in its response to the writ petition, to assert the stay of PERB's proceedings was proper.[7] We address those arguments seriatim.

*The Substantive Argument*

City extensively argued below, and asserts in this proceeding, that MEA's UPC lacks substantive merit because the meet and confer requirements under the MMBA, imposed before a City-sponsored initiative may be placed on the ballot under *Seal Beach, supra*, 36 Cal.3d 591, cannot be applied to require a city to meet and confer before it performs its ministerial duty to place a citizen-sponsored initiative measure on the ballot. Accordingly, City asserts it was proper to stay the PERB proceedings on MEA's UPC.

However, whether City's refusal to meet and confer over the CPRI was in fact an unfair labor practice under the MMBA constitutes a claim falling within PERB's exclusive initial jurisdiction (*Firefighters, supra*, 195

---

[7] Among City's arguments in this writ proceeding is that the stay was proper because it had the limited effect of delaying the administrative proceedings until after the election and, because there was no compelling reason for holding the administrative proceedings before the election, the temporary stay was proper. However, the court's order staying the PERB proceedings did not contain a sunset clause, and we therefore reject City's claim that it was proper as some sort of temporary order. Additionally, this argument—that it was proper to delay the administrative proceedings for a few months—appears dissonant with City's previous argument that the administrative remedies are inadequate because the administrative process is too slow and would delay implementation of the CPRI.

Cal.App.4th at pp. 1209–1211), and nothing bars City from presenting all of its statutory and constitutional arguments for resolution in that forum. (Cf. *Cumero, supra,* 49 Cal.3d at p. 583; *Public Employment Relations Bd. v. Superior Court, supra,* 13 Cal.App.4th at pp. 1830–1832 [fact that Governor contended imposition of meet and confer obligation by PERB under facts of that case would violate separation of powers does not "warrant judicial intervention prior to a final determination by the Board" of matters within PERB's initial exclusive jurisdiction].)

### The "Inherent Power" Claim

City also asserts the trial court's order staying the PERB administrative proceedings should be upheld as an exercise of its inherent power to control all proceedings relating to the litigation pending before it. (Cf. *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) However, the litigation pending before the trial court in this case was filed pursuant to the power granted to PERB under section 3541.3, subdivision (j), which PERB apparently deemed necessary to invoke to preserve the status quo pending resolution of the UPC in the administrative proceedings.[8] Thus, the superior court action was filed as an adjunct to, and in aid of, the administrative proceedings to resolve a dispute over which PERB had initial exclusive jurisdiction, and not as an action to resolve the merits of the UPC. This was a proper use of the powers granted to PERB, and the trial court was not called on to decide the merits of the underlying UPC when considering the relief sought by PERB in the superior court action. (See *Public Employment Relations Bd. v. Modesto City Schools Dist., supra,* 136 Cal.App.3d at pp. 896, 904–905 [PERB may seek a temporary injunction without establishing an unfair practice actually occurred and court is not " 'to determine the merits of the case' " when evaluating the request for injunctive relief].) City's argument—that PERB forfeits its initial exclusive jurisdiction under the MMBA if it exercises a power contemplated by the MMBA to preserve the status quo while it fulfills its statutory function to resolve MMBA claims—is not supported in logic or case law, and appears inconsistent with the statutory scheme. We therefore reject this argument.

### D. Conclusion

We conclude the trial court erred in ordering a stay of the PERB administrative proceedings.

---

[8] PERB's complaint specifically alleged injunctive relief was " 'just and proper' because unless the City's conduct . . . is properly enjoined, PERB will be unable to award an effective final remedy through its administrative proceedings," and its arguments in favor of the temporary injunctive relief alleged that "a final Board order would be meaningless without the relief sought."

---

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order staying the administrative proceedings and to enter a new order denying City's motion to stay the proceedings. Each party shall bear its own costs on appeal.

McConnell, P. J., concurred, and O'Rourke, J., concurred in the result.

A petition for a rehearing was denied July 3, 2012, and the petition of real parties in interest for review by the Supreme Court was denied August 29, 2012, S204306. Werdegar, J., did not participate therein.